# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| In Re: | ) |
| | ) Chapter 11 |
| TRI FUND DEVELOPMENT, LLC, | ) |
| | ) |
| | ) |
| | ) Case No. 15-04492 |
| Debtor. | ) |
| | ) |
| | ) Honorable Judge Janet S. Baer |

## AMENDED DISCLOSURE STATEMENT

TRI FUND DEVELOPMENT, LLC, Debtor and Debtor in Possession herein, by and through its Attorneys, files this Amended Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code and in conjunction with its Amended Plan of Reorganization ("Plan"). A copy of the Plan is attached to this Disclosure Statement as Exhibit A.

## INTRODUCTION

The Debtor in this case is a community based business entity formed approximately 20 years ago to encourage, and if necessary incubate, business development in Hyde Park and the Kenwood neighborhoods of Chicago. Debtor owns a sixty percent membership ownership of Lake Park, LLC (which owns and operates a commercial shopping center, located at 1300 E. 47th St., Chicago, Il 60653, near the University of Chicago in the Hyde Park community that has an appraised value of $15,200,000.00 as is and $17,200.000.00 stabilized value, that is subject to a $8,500,000.00 million dollar first mortgage held by Wells Fargo). Fund Development

1

Corporation ("FDC") is the sole member of the Debtor. Fund for Community Redevelopment and Revitalization ("FCRR") is the sole shareholder of FDC. Both FDC and FCRR are not for profit corporations and are under the direction and control of the same Board of Directors as the Debtor.

Lake Park, LLC is a Single Purpose Entity (SPE) that owns a commercial shopping center located at 1300 E. 47th , Chicago, Il 60653, blocks away from the University of Chicago in the Hyde Park community the Debtor has a 60 percent owner membership in the SPE. As noted the shopping center's current appraised value of $15,200,000 for several reasons. Chief among them is the makeup of the disproportionately large number of national credit tenants such as Ross, Citibank, Walgreens, Corporate owned Coldwell Banker, Sherwin Williams, Foot Locker, Weight Watchers, Original Pancake House and Subway. In 2011, Lake Park, LLC distributed to the Debtor $257,835.00. Since 2011, distributions to the Debtor and all members of Lake Park, LLC has been frozen by Lake Park, LLC's lender, Wells Fargo Mortgage. The reason for this change is that a center's anchor tenant (Michaels Fresh Markets Grocery, which represented over 52% of the Revenue to the center) filed Chapter 11Bankruptcy on December 30, 2011and terminated its lease with Lake Park, LLC. The loss of income from its anchor tenant, Michaels Fresh Markets required Lake Park to seek protection from Wells Fargo by entering into a Forbearance Agreement with them which caused Lake Park, LLC the inability to distribute funds, to its members moving forward. This is the reason that the Debtor reflects no income for the past three and half years. This is also the reason the debtor fell behind with Urban Partnership Bank, formerly South Shore Bank.

Lake Park, LLC is a profit making organization. In fact, Lake Park, LLC's current cash on hand as of June 13, 2015 is just under $505,000. These funds can be used for various

purposes on behalf of Lake Park, LLC, such as tenant improvement for the remaining vacant space, repayment of outstanding loans to its members, commission expenses for leasing of space all of which would require the approval of Wells Fargo. As described in this Plan, the Debtor intends to sell 40% of its 60% ownership interest in Lake Park, LLC for an already agreed and contracted price of $1,500,000 that will provide new funds to its Plan of Reorganization. Additionally, the debtor will be liquidating other assets as well. Specifically, a 15,000 square foot parcel of land located at 900 E. 43rd. Street, Chicago, Il 60653 (PIN: 20-02-120-009-0000) that is owned by Tri Funds sole member, Fund Development Corporation. This is one of several parcels that were pledged to Shore Bank at the time of the original $1,600,000.00 loan. There is a contract to purchase this parcel for $121,450.00, that's been approved by UPB. These funds will be used to fund the plan

Prior to the filing of this case, Urban Partnership Bank ("UPB') obtained a Judgment against the Debtor, FDC and FDRR for $1,784,003.25.   In order to reorganize and pay all creditors (including UPB) in full, the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on February 11, 2015. The Debtor has operated its business and managed its financial affairs as Debtor-in-Possession since the inception of this reorganization case pursuant to Sections 1101 and 1107 of the Bankruptcy Code.  No trustee, examiner or committee of unsecured creditors has been appointed to serve in this Chapter 11 case.

The Debtor is the proponent of this Plan. This Plan provides for distributions to the holders of allowed claims from the partial sale of its assets and assets of its shareholder.

The Debtor is the proponent of this Plan. This Plan provides for distributions to the holders of allowed claims from the partial sale of its assets and assets of its shareholder.

The attached Exhibit B lists each creditor and states the class and the amount of the

allowed claim(s) of each creditor. Using Exhibit B as a guide, the chart below shows the total dollar amounts and timing of payments to be made under the plan. This chart indentifies all classes of claims, the total amount of claims to each class, and the amount (dollar and percentages) to be paid to each class. Exhibit B (as well as the general description on the attached chart) shows the composition of each class.

In Summary, there are three classes of claims which are to be treated as follows:

|  | TOTAL $ AMOUNT TO BE PAID | TIMING OF PAYMENTS | NUMBER OF CLAIMS AND AMOUNT TO BE PAID IN PLAN |
|---|---|---|---|
| Class One-Administrative Claims | $50,000.00 (estimated) | Effective date of Plan | Debtor's attorney and United States Trustee (100%) |
| Class One-Unsecured See Exhibit B for Class Composition | $43,640.50 | Paid in full 90 days after confirmation | Five claims to be paid total of $43,640.50 (100%) |
| Class Two B-Secured Urban Partnership Bank | $1,926,901.91 | Paid in full 60 days after confirmation | One claim to be paid $1,926,901.91 by sale of membership interest and other items |
| Class Four - Equity Interest | $121,450.00 |  | Sale of Real Estate with Proceeds tendered to Urban Partnership Bank |

FURTHER SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

The Debtor's Plan of Reorganization (the "Plan") provides that on its Effective Date, the Debtor will sell some of its assets and all allowed claims will be paid in full, as provided below.

In general, the Debtor will pay Administrative Claims (One Class) and two classes of Creditors Claims (Total of Three Classes).

    a. ADMINISTRATIVE CLAIMS: This Claim will be paid on or within thirty days of the Effective Date of the Plan or in accordance with agreements between the Debtor

and each holder of an Administrative Claim. United States Trustee's fees and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due thereafter. The source of the payment for these amounts will be the Debtor.

b. CREDITOR CLAIMS:

1. At the time of filing of this case the debtor has secured priority and unsecured claims which are summarized in the following paragraphs. **The attached Exhibit B lists each creditor and states the class and the amount of the allowed claim(s) of each creditor.**

2. The following party holds a secured claim: (Class Two) United Partnership Bank is owed $1,926,901.91.

3. The following parties hold priority and or unsecured non priority claims (grouped together as all unsecured claims are being paid in full): (Class 1) National Protection & Investigation, Osahae & Associates, Ltd., Rosa Herrera, Deborah A. Miles and Meltzer, Purtill & Stelle, LLC are owed a combined $43,640.15. The debtor will pay the listed allowed unsecured creditors in full within 90 days of confirmation. (see Exhibit B for amount of allowed claim for each creditor).

4. Any uncashed checks or returned distributions shall be the property of the Debtor. The debtor advises all Creditors and other parties in interest that under Section 1127(a) of the Bankruptcy Code, the debtor may, within certain limits, modify the Plan at any time before confirmation. Further negotiations between the Debtor and one or more of its creditors my result in such modifications. The Debtor does not expect or intend to agree to modifications that would materially and adversely influence the feasibility of the Plan as now constituted. The Debtor will bring all

such proposed modifications to the attention of the Bankruptcy Court by appropriate pleading before they become effective.

c. Plan Funding: The Debtor will make all payments out of the sale of its assets and other sources. The Debtor expects to receive sales proceeds sufficient to pay all Claims.

d. Designation of Claims: The numbers used by the debtor are based on the amount for those creditors stated in the petition or if a Proof of Claim has been filed, the amount in proof of claim except as otherwise stated on the attached Claim List with amount of Allowed Claim(s) (Exhibit B). The debtor expects that there will be no material change in the amount of Claims before the hearing on confirmation.

ANALYSIS OF THE DEBTOR'S INCOME, CURRENT ASSETS AND LIABILITIES

a. The Debtor bases the amount of the sale proceeds based on its business judgment and reasonable information available.

b. The Debtor has had significant challenges regarding cash flow as a result of the forbearance agreement which terminated the income from Lake Park, LLC. The Debtor expects this situation to end after the Lake Park, LLC mortgage is refinanced which the Debtor expects to occur within sixty (60) days of Confirmation of the Plan.

c. The Debtor projects sale proceeds sufficient to make all required payments under the Plan.

d. Subsequent to consummation and all payment under the Plan, the Debtor expects that yearly payments of income from Lake Park, LLC from its remaining twenty percent membership interest will fund future operations. This is reflected in that attached projections.

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Bankruptcy Code requires that a plan of reorganization place each classified creditor's Claim in a class with other Claims or Interests that are "substantially similar." The dollar amount of a claim is usually not a basis upon which to distinguish it from other Claims.

As stated, the Plan establishes four classes of Claims. The Bankruptcy Court must independently conclude that the Plan's classification scheme is authorized, but any creditor who believes that the Plan has improperly classified any group of Claims or Interest may object to confirmation of the Plan. The Debtor believes that the Plan's classification of Claims and Interests fully complies with the requirements of the Bankruptcy Code and applicable case law.

General Terms: All Claims submitted by creditors shall be fixed and determined in accordance with the proof of claim filed the Clerk of the United States Bankruptcy Court. Unless otherwise specifically provided in this Disclosure Statement following the Petition Date:

a. No creditor shall accrue interest on its Claim after the Petition Date;

b. If the agreement between the parties so provides, a Creditor may accrue interest on its Claim (at the rate provided in the agreement).

c. After the Petition Date, each Creditor not referred to in paragraph b waives:

 1. default interest;

 2. penalties; the right to accelerate payment; and

 3. Contractual attorney's fees.

d. Effect of Filing and Not Filing Claims-Each Creditor, who has filed a proof of claim, is not bound by the Debtor's estimates of Claims against it. Any creditor, who did not file a proof of claim, is bound by the Debtor's calculation of the amount owed to

that creditor. If the debtor disputed a debt on its schedules and the Creditor in question did not file a proof of claim, the debt shall be deemed disallowed. Claims for expenses of administration may be allowed in the discretion of the Bankruptcy Court and for amounts over which the Debtor has no control.

TREATMENT OF UNIMPAIRED AND UNCLASSIFIED CLAIMS

The following class is unimpaired by the Plan in accordance with Section 1124 of the Bankruptcy Code:

a. **(Class One) Administrative Expenses** - These claimants represent claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash or as otherwise agreed. Payment of Professional Fees shall be subject to the provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due thereafter. The source of payment for these amounts will be the Debtor's income from operations and from employment. The Debtor expects Administrative Claims will be approximately $50,000.00 as of the Effective date.

**TREATMENT OF IMPAIRED CLAIMS**

ALLOWED CLAIMS THAT ARE IMPAIRED

CLASS 1- Unsecured Non Priority Creditors-This class shall consist of the Allowed Claims and Not Disputed Claims of general unsecured creditors in the amount of $43,640.50. Exhibit B to the Debtor's Amended Disclosure Statement states which creditors are a part of this Class 1 and which creditor's claims are not allowed and disputed and therefore not being paid. The Debtor will pay cash of $43,640.50 within ninety days of Confirmation of the Plan.

It is estimated that each holder of an unsecured and undisputed claim will receive one hundred percent without interest.

CLASS Two - Secured Claim of CLASS Two - Urban Partnership Bank asserts that Debtor owes the total amount of $1,926,901.91 (Amended Claim 1) that it holds a UCC security interest on the distributional membership of the Debtor in Lake Park, LLC and mortgages in vacant land owed by FDC. Lake Park, LLC will refinance its first Mortgage held by Wells Fargo within sixty days of Confirmation of the Plan. Confirmation of this Plan is necessary for this to happen as Urban Partnership Bank has withheld its consent until such time as the judgment can be satsified. As a part of the refinance transaction $1,926,901.91 will be paid to Urban Partnership Bank within sixty days of confirmation as follows:

a) The Debtor will sell to Debbie Korompilas 40% of its 60% ownership of its interest (40%) in Lake Park, LLC for $1,500,000.00, the proceeds of which will be paid to Urban Partnership Bank;

b) As part of the refinance proceeds Lake Park, LLC will repay its loan to the Debtor estimated to be $367,190.00, which debtor will tender to Urban Partnership Bank;

c) FDC (which agrees to be bound by this Plan) will sell the real estate commonly known as 900 East 43rd Street, Chicago, Illinois for $121,450.00.

The amount owed to Urban Partnership Bank may be prepaid without penalty. Once Urban Partnership Bank's secured claim has been paid, in full, Urban Partnership Bank shall cause the security interests to be released and any other loan documentation, to be cancelled and surrendered as satisfied. Urban Partnership Bank's secured claim is impaired under the Plan. All remaining terms of the original note that are not inconsistent with this section remain in effect.

## CLAIMS OBJECTIONS

To the extent that the Debtor objects to any Claim, it is expected that these objections may be filed either before or after Confirmation of the Plan, but will not be fully resolved until after Confirmation of the Plan. Debtor may file objections because 1) a creditor filed duplicate claims, 2) because a creditor has filed a claim designating it to be in the wrong class, or 3) because the amount of the claim as filed is an unliquidated amount due which will need to be liquidated. Any claim objection which is sustained shall modify this Plan and the amount provided for that creditor.

## PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided to all of the known holders of Claims against and Interests in the Debtor. The purpose of this Disclosure Statement is to provide sufficient information to enable a hypothetical, reasonable investor, typical of the holder of Claims which are impaired under the Plan, to make an informed judgment about the Plan.

Unless specifically stated to be from other sources, the information contained in this Disclosure Statement has been submitted by the Debtor. No representations concerning the Debtor or this Plan, other than those set forth in this Disclosure Statement, have been authorized by the Debtor.

The Debtor believes that all of the information contained in this Disclosure Statement is accurate. However, the Debtor is unable to warrant that there are no inaccuracies.

## CONFIRMATION OF PLAN

The Debtor is providing a copy of this Disclosure Statement to each Creditor whose Claim has been scheduled by the Debtor or who has filed a proof of claim in the

Debtor's case.  The Debtor intends that this Disclosure Statement will assist creditors whose Claims are impaired in evaluating the Plan and in determining whether to accept or reject the Plan.  Under the Bankruptcy Code, an interested party may not solicit acceptance of the Plan unless (a) that interested party furnishes a copy of a disclosure statement before or concurrently with solicitation or (b) the Bankruptcy Court has authorized the interested party to solicit votes.

A quick overview of the process for the confirmation of a reorganization plan may be useful.  For a bankruptcy court to approve a proposed reorganization plan, the Plan's proponent must show that the Plan satisfies the 13 requirements of Section 1129 of the Bankruptcy Code, if they are applicable.  They are: (1) the Plan's compliance with Title 11, (2) the proponent's (in this case the Debtor's) compliance with Title 11, (3) the good faith proposal of the Plan, (4) the disclosure of payment, (5) the identification of management, (6) the regulatory approval of rate changes, if applicable, (7) the "best interest" test, (8) the unanimous acceptance by impaired classes, (9) the treatment of administrative and Priority Claims, (10) the acceptance by at least one impaired class of Claims, (11) the feasibility of the plan, (12) the bankruptcy fees, and (13) retiree benefits. See Section 1129(a)(1)-(13) of the Bankruptcy Code.

If, however, a plan is not approved by all of the impaired classes, as required by Section 1129(a)(8) of the Bankruptcy Code, it is still possible for a plan to be confirmed.  If at least one the non-insider, impaired classes of Claims approves the plan, then a plan may be confirmed if two additional requirements are met. See 1129(a)(8) of the Bankruptcy Code.  If the Bankruptcy Court finds that all of the applicable requirements of Section 1129(a) of the Bankruptcy Code are met except for

Section 1129(a)(8) of the Bankruptcy Code and also that the plan does not discriminate unfairly between impaired classes and is fair and equitable to the rejecting classes, then the Bankruptcy Court may confirm the plan.  See Section 1129(b)(1)-(2) of the Bankruptcy Code.

If the Plan is accepted by Class One or Class Two the Debtor will still seek to confirm the Plan pursuant to the new value exception to the absolute priority rule.  To accomplish this, the Debtor will offer to acquire the stock of Reorganized Debtor to persons or entities other than Fund Development Corporation.  As noted elsewhere persons or entities that wish to make a Higher Offer for the Stock of Reorganized Debtor must submit such offer to the Debtor in writing at least three business days prior to the Confirmation Hearing.  In the event, the Debtor determines that the Higher Offer is, indeed, more advantageous to the Bankruptcy Estate, then there shall be an auction for the stock of Reorganized Debtor at the Confirmation Hearing, at which existing Stockholders and the Person or Entity making the Highest Offer shall be able to participate.

## EFFECT OF CONFIRMATION

Upon the Effective Date, any debt that rose before the Petition Date, and any debt of a kind specified in Section 502(g), 502(h) or 502 (i) shall be discharged, except as otherwise provided in the Plan. This discharge shall be effective regardless of whether or not a proof of claim is filed or deemed filed, a Claim is an Allowed Claim or the holder of Claim has accepted the Plan.

The provisions of the Plan shall be binding upon the Debtor and any creditor or equity security holder, whether or not such creditor or equity security holder has

accepted the Plan and regardless of whether the Claims of such creditor or equity security holder are impaired under the Plan. Upon the Effective Date, all Property of the Estate shall vest in the Debtor. Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all Claims and Interest of creditors and equity security holders.

## PERSONS ENTITLED TO VOTE ON PLAN

The Bankruptcy Court in connection with confirmation of the Plan will only count the votes of classes of creditors whose Claims are allowed and who the Debtor seeks to impair under the Plan. Generally, and subject to the specific provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full in cash of the allowed amounts of their respective Claims on the "Effective Date." The Debtor's Plan seeks to impair the Claims of Class One and Two.

Any ballot which accompanies this Disclosure Statement does not constitute a proof of claim. If any creditor is uncertain whether its claim has been correctly scheduled, it may examine the Debtor's schedules which are on file with, and may be inspected at the Office of the Clerk of the Bankruptcy Court, 219 S. Dearborn, Chicago, Illinois as well as the attached chart showing each creditor the class of that creditor as well as the amount the debtor believes each creditors claim should be allowed.

The Bankruptcy Court at the confirmation hearing must determine, among other things, whether each class of creditors whose Claims are impaired by the Plan has accepted the Plan. Under Section 1126 of the Bankruptcy Code, an impaired Class of Claims is considered to have accepted the Plan if both a majority in number and two-

thirds (2/3) of the dollar amount of those actually voting vote to accept the Plan. The Claims of those who do not vote are not counted in determining whether the requisite statutory majority in number and dollar amount have voted for acceptance. Acceptance by the statutory majority will bind the minority who dissent and those who fail to vote. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Bankruptcy Court must also determine whether under the Plan class members will receive property of a value, as of the effective date of the Plan, that is not less than the amount that such class members would receive or retain, if a Chapter 7 trustee liquidated the Debtor's property under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

## SOURCES OF INFORMATION

In preparing this Disclosure Statement, counsel for the Debtor relied upon the utilized the following:

(1) Income and Expense records;

(2) Financial records; and Estimation of the sale of assets and other sources and financial information; and

(3) Discussions with the Debtor.

## POST-PETITION ACTIVITIES

On February 11, 2015, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. During the course of this reorganization case, the Debtor continued to investigate the sales of assets and other sources. Since the date of filing the debtor has had no income and that will remain until Lake Park, LLC has refinanced the commercial shopping center. Based on this Plan being confirmed that refinance can proceed.

All of the above events have enabled the Debtor to prepare the Plan.

## OTHER ASPECTS OF THE PLAN

The Debtor shall be disbursing agent under the Plan.

All executory contracts not previously assumed, assigned or rejected which exist between the Debtor and any another party whether oral or in writing, shall be deemed assumed as of Confirmation of the Plan.

Further, all of the Debtor's assets shall vest in the Debtor upon Confirmation of the Plan, subject only to the terms and conditions of the Plan. The Debtor shall be entitled to manage their affairs and operate its business after Confirmation without further Order of the Bankruptcy Court.

The Plan is self-executing. The Debtor shall not be required to execute any newly created documents to effectuate the terms of the Plan. The Bankruptcy Court shall retain jurisdiction after Confirmation of the Plan of Reorganization to: (i) consider applications for fees and allowances for professional persons; (ii) supervise the implementation of this plan; (iii) consider objections to claims against the estate of the debtor; (iv) hear and conclude all adversary proceedings or contested matters; (v) resolve disputes regarding interpretation of this Plan; (vi) fix expenses of administration; (vii) enter Orders to further consummation of the Plan; (viii) approve modifications of the Plan upon motions brought before the Bankruptcy Court; (ix) consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation; (x) hear and conclude any adversary proceedings and other matters relating or giving rise to litigation recoveries; (xi) enter any order, including injunctions, necessary to enforce title, rights and powers of the debtor, and to impose as the Bankruptcy Court may deem necessary; and (xii) enter an Order concluding and terminating this Chapter 11 case.

The provisions of the Plan shall bind all creditors, Interest holders and parties in interest. Except as expressly provided in the Plan, no interest or penalties shall accrued or be paid to any creditor.

## LIQUIDATION ANALYSIS

Failure of the Debtor to obtain Confirmation of its Plan could result in a forced liquidation (by secured creditors. or a conversion to a case under Chapter 7 of the Bankruptcy Code. The following comparison indicates the likely results of a forced liquidation and shows that under the Plan creditors will be paid in full. All creditors will be paid in full whether this case proceeds under the proposed plan or a liquidation occurs under Chapter 7.

## MEANS FOR IMPLEMENTING THE PLAN

The Debtor intends to continue the operations of its business which, based upon the data, after all allowed claims are paid as provided by this Plan. All distributions under the Plan will be made from the sale of assets and other sources.

## FEASIBILITY AND FAIRNESS OF PLAN

Attached to this Disclosure Statement, in addition to Exhibit B (creditor and class breakdown) is a Liquidation Analysis, and projections for the next five years. The projections are based on that after the plan is consummated and payments made that the Debtor will continue to operate based on yearly distributions of its remaining 20 percent membership interest in Lake Park, LLC. This is not a Liquidating Plan and the Debtor will continue to operate its business, however, no portion of the plan payments will come from its operations; only from the sale of assets and other sources. The purpose of the projected financial information concerns the Debtor's ability to make the payments under the Plan and future operations.

The Plan is feasible given the liquidated value of the Debtor. These value of the assets clearly reflect the Debtor's ability to perform under the proposed Plan. This fact makes this Plan feasible.

The Debtor believes that this Plan represents an opportunity for the holders of Allowed Claims to be paid in full. Therefore, the Plan is also fair and reasonable.

## RECOMMENDATION

The Debtor strongly recommends that those persons entitled to vote, vote to accept the Plan.

TRI FUND DEVELOPMENT, LLC

By: /s/Paul M. Bach
Paul M. Bach, one of their attorneys

SULAIMAN LAW GROUP, LTD.
900 JORIE BOULEVARD, SUITE 150
OAK BROOK, IL 60523
PHONE: (630) 575-8181
FAX: (630) 575-8188
ATTORNEY NO: 6209530