IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | Case No.: 15-04492 |
| TRI FUND DEVELOPMENT, INC., | § | |
| | § | Hearing: August 10, 2015 |
| | § | 10:00 a.m. |
| Debtor. | § | |
| | § | Hon. Janet S. Baer |

**OBJECTION TO CONFIRMATION
FILED BY URBAN PARTNERSHIP BANK**

Urban Partnership Bank (the "Bank"), by its attorneys, Stahl Cowen Crowley & Addis LLC, files this Objection to Confirmation (the "Objection") of the amended chapter 11 plan (the "Plan") filed by the debtor in this case, Tri Fund Development, Inc. (the "Debtor"). In support of the Objection, the Bank respectfully states as follows.

**Introduction**

1. The Debtor filed its Plan in this case on June 14, 2015 (Doc. 65).

2. The Bank has filed this Objection in the hope that certain actions can be taken by the Debtor and by third parties to the case, which would cause the Bank to withdraw the Objection and support a modified version of the Plan.

**Facts**

3. The Debtor's primary asset is a 60% membership interest in an Illinois limited liability company named Lake Park LLC ("Lake Park"). Lake Park owns a shopping center in Chicago (the "Shopping Center") which has an appraised value of approximately $15.2 Million.

4. Lake Park owes a debt to the Debtor in the principal amount of $300,000.00 (the "Debt").

5. On information and belief, Lake Park cannot pay the Debt until it has refinanced a mortgage (the "Mortgage") owned by a unit of Wells Fargo Bank which now encumbers the Shopping Center.

6. On information and belief, Lake Park cannot refinance the Mortgage until the Debtor has satisfied the Bank's Claim, in one way or another. As a result, there is an uncertainty as to whether the Debtor will be able to secure the repayment of the Loan, in whole or in part.

7. To raise capital to fund the Plan, the Debtor recently attempted to sell 2/3rds of its 60% membership interest in Lake Park to a third party for $1.5 Million. On information and belief, this sale did not occur due to the Debtor's inability to secure consents to the sale from non-debtor entities who own the remaining 40% of the membership of Lake Park.

8. The Debtor now seeks to raise $1.5 Million, either by having its parent company sell a portion of its equity interest in the Debtor to the same third-party financier that wanted to buy part of the Debtor's Lake Park membership, or, in the alternative, by having the Debtor's parent issue new equity interests in the parent company to that financier (the "Fund Raise").

9. The Debtor's Plan also contemplates that after confirmation, the Debtor will be able to secure the repayment of the Debt, with approximately $67,000.00 of interest.

10. On March 24, 2014, the Bank obtained a judgment against the Debtor and others in the amount of $1,784,003.00 (the "Judgment") in a civil action pending in the Circuit Court of Cook County, Illinois.

11. The Bank has not (yet) received a payment on the Judgment from any source.

12. The Debtor has taken the position in this case that the Bank's Judgment is fully secured.

13. If the value of the Debtor's 60% interest in Lake Park can be reasonably based on the value of the Shopping Center owned by Lake Park, the Bank's claim in this case would indeed be fully secured, and the Debtor would indeed be solvent, as it has previously claimed.

### Feasibility -Section 1129(a)(11)

14. The Plan is feasible (for purposes of 11 U.S.C. §1129(a)(11), only if the Fund Raise is successful *and* the Debtor is able to secure the repayment of the Debt with interest *and* a sale of land owned by a non-debtor and which is not property of estate (but which is collateral for the Bank's claim) successfully closes and generates about $122,000.00 of net proceeds to the Bank.

15. If any one or more of the above contingencies fails to occur, the Debtor will not have enough money to fund its Plan as it is currently written.

16. There are enough contingencies attached to each of the three financing sources which the Debtor relies on to fund the Plan, to make it more likely than not that the Plan will fail and the Debtor will require further restructuring.

17. If the Debtor is required to pay the full amount of the Bank's claim, with interest, fees and costs which may be allowed to the Bank under 11 U.S.C. §506(b), then there may not be sufficient funds available to pay other claims, absent an additional fund raise by the Debtor or increased flexibility on the part of the non-debtor members of Lake Park to upstream profits from the Shopping Center to the Debtor.

**Section 1129(b)**

18.     The Debtor's Plan may be confirmed over the Bank's objection only if it is "fair and equitable" with respect to the treatment of the Bank's claim under 11 U.S.C. §1129(b)(2)(A).

19.     The Bank, as an oversecured creditor, is entitled to receive interest on its claim, as well as reimbursement of reasonable fees, expenses and costs, including legal and professional fees, expenses and costs.  11 U.S.C. §506(b).

20.     The Plan is not "fair and equitable" with respect to the Bank's allowed secured claim, to the extent that the Plan would deny the Bank interest and the recovery of its fees, expenses and costs which Section 506(b) entitles it to receive.

21.     Article IX of the Plan would "invalidate" the liens which secure the Bank's claim, replacing the Bank's security interest in the Debtor's property with an unsecured promise by the Debtor to do as the Plan requires it to do in the future.  The Bank has a significant concern about this, as the Debtor's ability to do as its Plan requires is contingent on the actions of third parties who are not subject to the Court's control.

22.     A plan provision which converts a secured claim to an unsecured claim, which is the effect of Article IX of the Plan, without providing alternate non-debtor collateral or other "indubitable value" for the Bank's loss, is neither fair nor equitable for purposes of Section 1129(b)(2)(A).  The Bank opposes any plan, even a feasible one, which would strip its liens prior to the Bank's receipt, in good funds, of the full amount of the Bank's allowed secured claim.

[intentionally blank]

WHEREFORE, the Urban Partnership Bank respectfully prays that the Court enter an Order which: (a) denies confirmation of the Debtor's Amended Plan of Reorganization; and (b) grants to Urban Partnership Bank such further relief as the court deems just.

Dated: July 28, 2015                                   **Urban Partnership Bank**

                                  By: /s/ Bruce Dopke
                                      One of its attorneys

Andrew H. Eres (ARDC # 6237032)
Bruce Dopke, of counsel (ARDC # 3127052)
Stahl Cowen Crowley Addis, LLC
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Tel: 312-641-0060
Fax: 312-423-8189