## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In Re:                              )
                                    )      Chapter 11
TRI FUND DEVELOPMENT, LLC,          )
                                    )
                                    )
                                    )      Case No. 15-04492
            Debtor.                 )
                                    )
                                    )      Honorable Judge Janet S. Baer

### DEBTOR'S DISCLOSURE STATEMENT DATED SEPTEMBER 9, 2015

**TRI FUND DEVELOPMENT**, LLC, Debtor and Debtor in Possession herein, by and

through its Attorneys, files this Disclosure Statement dated September 9, 2015 ("Disclosure

Statement") pursuant to Section 1125 of the Bankruptcy Code and in conjunction with its Plan

of Reorganization dated September 9, 2015 ("Plan"). A copy of the Plan is attached to this

Disclosure Statement as Exhibit A.

### INTRODUCTION

This Plan has been proposed by the Debtor. The Debtor in this case is a community based

business entity formed approximately 20 years ago to encourage, and if necessary incubate,

business development in Hyde Park and the Kenwood neighborhoods of Chicago. Debtor owns a

sixty percent membership ownership of Lake Park, LLC (which owns and operates a commercial

shopping center, located at 1300 E. 47th St., Chicago, Illinois 60653, near the University of

Chicago in the Hyde Park community that has an appraised value of $15,200,000.00 as is and

$17,200,000.00 stabilized value, which is subject to a $8,500,000.00 first mortgage held by

Wells Fargo). Fund Development Corporation ("FDC") is the sole member of the Debtor. Fund

for Community Redevelopment and Revitalization ("FCRR") is the sole shareholder of FDC.

Both FDC and FCRR are not for profit corporations and are under the direction and control of

the same Board of Directors as the Debtor.

Lake Park, LLC is a Single Purpose Entity (SPE) that owns a commercial shopping

center located at 1300 E. 47th, Chicago, Illinois, 60653, which is blocks away from the

University of Chicago in the Hyde Park community. The Debtor has a 60 percent owner

membership in the SPE. The shopping center's current appraised value is $15,200,000 for

several reasons. Chief among the reasons is the makeup of the disproportionately large number

of national credit tenants such as Ross, Citibank, Walgreens, Corporate owned Coldwell Banker,

Sherwin Williams, Foot Locker, Weight Watchers, Original Pancake House and Subway. In

2011, Lake Park, LLC distributed to the Debtor $257,835.00. Since 2011, distributions to the

Debtor and all members of Lake Park, LLC have been frozen by Lake Park, LLC's lender, Wells

Fargo Mortgage. The reason for this change is that a center's anchor tenant (Michaels Fresh

Markets Grocery, which represented over 52% of the Revenue to the center) filed Chapter 11

Bankruptcy on December 30, 2011and terminated its lease with Lake Park, LLC. The loss of

income from its anchor tenant, Michaels Fresh Markets, required Lake Park, LLC to seek

protection from Wells Fargo by entering into a Forbearance Agreement with them that caused

Lake Park, LLC the inability to distribute funds to its members moving forward. This is the

reason the Debtor reflects no income for the past three and a half years. This is also the reason

the debtor fell behind with Urban Partnership Bank, formerly South Shore Bank.

Lake Park, LLC is a profit making organization. In fact, Lake Park, LLC's current cash

on hand as of June 13, 2015 is just under $505,000.00. These funds can be used for various

purposes on behalf of Lake Park, LLC, such as tenant improvement for the remaining vacant space, repayment of outstanding loans to its members, commission expenses for leasing of space all of which would require the approval of Wells Fargo. As described in this Plan, the Debtor intends to sell a 66% ownership interest in the Debtor for an already agreed and contracted price of $1,200,000.00 that will provide new funds to its Plan of Reorganization. Additionally, the debtor's parent corporations (FDC & FCRR) will be liquidating other assets. Specifically, a 15,000 square foot parcel of land located at 900 E. 43rd Street, Chicago, Il 60653 (PIN: 20-02-120-009-0000) that is owned by Tri Funds sole member, FDC. This is one of several parcels that were pledged to Shore Bank at the time of the original $1,600,000.00 loan. There is a contract to purchase this parcel for $121,450.00 that has been approved by UPB. These funds will be used to fund the plan

Prior to the filing of this case, Urban Partnership Bank ("UPB') obtained a Judgment against the Debtor, FDC and FDRR for $1,784,003.25. In order to reorganize and pay all creditors (including UPB), the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on February 11, 2015. The Debtor has operated its business and managed its financial affairs as Debtor-in-Possession since the inception of this reorganization case pursuant to Sections 1101 and 1107 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed to serve in this Chapter 11 case.

Under the Plan, the Debtor will use $50,000.00 of the cash in the estate as reserves for paying the anticipated cost of this case and as permitted the unsecured priority and non-priority creditors with the remainder of these creditors to be paid in full within sixty days after UPB's claim is satisfied as provided by this Plan. The $50,000.00 would be used to pay according to priority at least the estimated amount of Claims that the Bankruptcy Code requires the Debtor to

3

pay in full when the Plan becomes effective. This includes Administrative Claims. Any

Unsecured Priority Claims and Unsecured Non Priority Claims (which are defined in the Plan,

and in Exhibit A to the Plan) would pay be paid of the remainder of the $50,000.00 with any

amount remaining paid within sixty days after UPB's claim is satisfied as provided by this Plan.

The Debtor is the proponent of this Plan. This Plan provides for distributions to the

holders of allowed claims from the partial sale of its assets and assets of its shareholder.

The Debtor is the proponent of this Plan. This Plan provides for distributions to the

holders of allowed claims from the partial sale of its assets and assets of its shareholder.

The attached Exhibit B lists each creditor and states the class and the amount of the

allowed claim(s) of each creditor.   Using Exhibit B as a guide, the chart below shows the total

dollar amounts and timing of payments to be made under the plan. This chart indentifies all

classes of claims, the total amount of claims to each class, and the amount (dollar and

percentages) to be paid to each class.   Exhibit B (as well as the general description on the

attached chart) shows the composition of each class.

In Summary, there are three classes of claims which are to be treated as follows:

| | TOTAL $ AMOUNT TO BE PAID | TIMING OF PAYMENTS | NUMBER OF CLAIMS AND AMOUNT TO BE PAID IN PLAN |
|---|---|---|---|
| Class One-Administrative Claims | $50,000.00 (estimated) | Effective date of Plan | Debtor's attorney and United States Trustee (100%) |
| Class One-Unsecured See Exhibit B for Class Composition | $40,497.50 | Paid in full | Four claims to be paid total of $40,497.50 |
| Class Two B-Secured Urban Partnership Bank | $1,926,901.91 | Paid in full | One claim to be paid $1,926,901.91 |

Class Four - Equity Interest

FURTHER SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

The Debtor's Plan of Reorganization (the "Plan") provides that on its Effective Date, the

a portion of the Debtor will be sold as well as assets of the Debtor's parent corporations and all

allowed claims will be paid in full, as provided below.

In general, the Debtor will pay Administrative Claims (One Class) and two classes of

Creditors Claims (Total of Three Classes).

a.  ADMINISTRATIVE CLAIMS: This Claim will be paid on or within thirty days of

the Effective Date of the Plan or in accordance with agreements between the Debtor

and each holder of an Administrative Claim.  United States Trustee's fees and other

bankruptcy fees shall be paid in full on or before the Effective Date or as they come

due thereafter.  The source of the payment for these amounts will be the Debtor.

b.  CREDITOR CLAIMS:

1.  At the time of filing of this case the debtor has secured priority and unsecured

claims which are summarized in the following paragraphs.  **The attached Exhibit

B lists each creditor and states the class and the amount of the allowed

claim(s) of each creditor.**

2.  The following party holds a secured claim: (Class Two) United Partnership Bank

is owed $1,926,901.91.

3.  The following parties hold priority and or unsecured non priority claims (grouped

together as all unsecured claims are being paid in full):  (Class 1) National

Protection & Investigation, Osahae & Associates, Ltd., Rosa Herrera and Deborah

A. Miles are owed a combined $40,497.50.  The debtor will pay the listed allowed

unsecured creditors partially with the remainder of the $50,000.00 of cash from

the estate that is held in reserves for anticipated costs of the case and the remainder shall be paid after the UPB is paid according to the Plan.

4. Any uncashed checks or returned distributions shall be the property of the Debtor after the Debtor makes a good faith effort to locate the Creditor. The debtor advises all Creditors and other parties in interest that under Section 1127(a) of the Bankruptcy Code, the debtor may, within certain limits, modify the Plan at any time before confirmation. Further negotiations between the Debtor and one or more of its creditors my result in such modifications. The Debtor does not expect or intend to agree to modifications that would materially and adversely influence the feasibility of the Plan as now constituted. The Debtor will bring all such proposed modifications to the attention of the Bankruptcy Court by appropriate pleading before they become effective.

c. Plan Funding: The Debtor will make all payments out of the sale of its assets and other sources. The Debtor expects to receive sales proceeds sufficient to pay all Claims.

d. Designation of Claims: The numbers used by the debtor are based on the amount for those creditors stated in the petition or if a Proof of Claim has been filed, the amount in proof of claim except as otherwise stated on the attached Claim List with amount of Allowed Claim(s) (Exhibit B). The debtor expects that there will be no material change in the amount of Claims before the hearing on confirmation.

## ANALYSIS OF THE DEBTOR'S INCOME, CURRENT ASSETS AND LIABILITIES

a. The Debtor bases the amount of the sale proceeds based on its business judgment and reasonable information available.

6

b. The Debtor has had significant challenges regarding cash flow as a result of the forbearance agreement which terminated the income from Lake Park, LLC. The Debtor expects this situation to end after the Lake Park, LLC mortgage is refinanced which the Debtor expects to occur within sixty (60) days of Confirmation of the Plan.

c. The Debtor projects sale proceeds sufficient to make all required payments under the Plan.

d. Subsequent to consummation and all payment under the Plan, the Debtor expects that yearly payments of income from Lake Park, LLC from its remaining twenty percent membership interest will fund future operations. This is reflected in that attached projections.

### CLASSIFICATION OF CLAIMS AND INTERESTS

The Bankruptcy Code requires that a plan of reorganization place each classified creditor's Claim in a class with other Claims or Interests that are "substantially similar." The dollar amount of a claim is usually not a basis upon which to distinguish it from other Claims.

As stated, the Plan establishes four classes of Claims. The Bankruptcy Court must independently conclude that the Plan's classification scheme is authorized, but any creditor who believes that the Plan has improperly classified any group of Claims or Interest may object to confirmation of the Plan. The Debtor believes that the Plan's classification of Claims and Interests fully complies with the requirements of the Bankruptcy Code and applicable case law.

General Terms: All Claims submitted by creditors shall be fixed and determined in accordance with the proof of claim filed the Clerk of the United States Bankruptcy Court. Unless otherwise specifically provided in this Disclosure Statement following the Petition Date:

a.   No creditor shall accrue interest on its Claim after the Petition Date;

b.   If the agreement between the parties so provides, a Creditor may accrue interest on its Claim (at the rate provided in the agreement).

c.   After the Petition Date, each Creditor not referred to in paragraph b waives:

    1.   default interest;

    2.   penalties; the right to accelerate payment; and

    3.   Contractual attorney's fees.

d.   Effect of Filing and Not Filing Claims-Each Creditor, who has filed a proof of claim, is not bound by the Debtor's estimates of Claims against it.  Any creditor, who did not file a proof of claim, is bound by the Debtor's calculation of the amount owed to that creditor.  If the debtor disputed a debt on its schedules and the Creditor in question did not file a proof of claim, the debt shall be deemed disallowed.  Claims for expenses of administration may be allowed in the discretion of the Bankruptcy Court and for amounts over which the Debtor has no control.

<u>TREATMENT OF UNIMPAIRED AND UNCLASSIFIED CLAIMS</u>

The following class is unimpaired by the Plan in accordance with Section 1124 of the Bankruptcy Code:

a.   **(Class One) Administrative Expenses** - These claimants represent claims arising post-petition.  Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash or as otherwise agreed.  Payment of Professional Fees shall be subject to the provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan.  United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they

come due thereafter. The source of payment for these amounts will be the Debtor's

income from operations and from employment. The Debtor expects Administrative

Claims will be approximately $50,000.00 as of the Effective date.

## TREATMENT OF IMPAIRED CLAIMS

### ALLOWED CLAIMS THAT ARE IMPAIRED

**CLASS 1**- Unsecured Priority and Non Priority Creditors- The remainder of the

$50,000.00 of cash from the estate that is held in reserves for anticipated costs of the case shall

be provided to the holders of Allowed Unsecured Claims (includes both claims which are

unsecured and are entitled and not entitled to priority in payment under the Bankruptcy Code) as

permitted. The unsecured priority and non-priority creditors are to be paid in full within sixty

days after UPB's claim is satisfied as provided by this Plan. The $50,000.00 would be used to

pay according to priority at least the estimated amount of Claims that the Bankruptcy Code

requires the Debtor to pay in full when the Plan becomes effective. This includes Administrative

Claims. Any Unsecured Priority Claims and Unsecured Non Priority Claims (which are defined

in the Plan, and in Exhibit A to the Plan) would be paid of the remainder of the $50,000.00 with

any amount remaining paid within sixty days after UPB's claim is satisfied as provided by this

Plan. No interest shall be paid on Unsecured Claims.

**CLASS Two** - Secured Claim of Urban Partnership Bank

a) On or before the last day for UPB to vote for the Plan, one or more investors (the

"Investors") to be identified no later than the commencement of the Confirmation Hearing will

deposit at least $1.2 Million with Fund Development in good funds (the "New Equity"). The full

amount of the New Equity will be transferred to the Debtor on the Effective Date. Unless the

Investors agree otherwise, Fund Development will return the New Equity to them, without offset or reduction, if the Plan is not confirmed.

b)      Within forty-eight (48) hours after the proceeds of the New Equity have cleared the Debtor's deposit account and are available for transfer, the Debtor shall disburse those proceeds to creditors holding Allowed Claims in accordance with the terms of the Plan (the "Initial Disbursement"). The first Fifty Thousand Dollars ($50,000.00) of the Initial Disbursement will be used to pay claims entitled to priority under 11 U.S.C. §503(a) ("Administrative Claims") or 11 U.S.C. §507(a) ("Priority Claim"), in full and without interest, unless the holders of those claims agree to defer part of the payment due to them and then as provided in Class One. The remaining amount of the Initial Disbursement (which shall not be less than $1.15 Million) will be paid to the Bank, and applied by the Bank to the principal amount due on its Claim against the Debtor.

**The Lake Park Loan:**

c)      Lake Park LLC ("Lake Park") owes approximately $380,000.00 to the Debtor, which arises from a loan which the Debtor made to Lake Park several years ago (the "Lake Park Loan"). Lake Park has informed Debtor that it will repay the Lake Park Loan following a planned refinance of its existing secured debt. Once that refinancing closes (which Debtor estimates will occur within eight weeks of the Confirmation of the Plan), Lake Park shall repay its debt to the Debtor (the "Loan Proceeds"). Upon receipt of the Loan Proceeds in good funds, the Debtor shall disburse those proceeds first, to pay the unpaid portion of the Allowed Claim of the Bank (if any) in accordance with the terms of the Plan; and second, to the extent of available funds, to pay the unpaid portion of any Administrative Claims or Priority Claims which remain due; and third, to holders of Allowed Unsecured Claims.

10

### Dismissal of the Case

d)      After Confirmation, on the motion of the Bank or the United States Trustee, or any party

in interest (this does not limit and other remedies provided for by the Bankruptcy Code), the

Court shall have the power (and the retained jurisdiction) to dismiss that Case if the following

actions have not been completed within the time periods required by the Plan or set forth below:

a) the proceeds of the New Equity (of not less than $1.2 Million) have not been transferred to the

Debtor within two (2) days of the Effective Date; b) the Debtor has not made the Initial

Disbursement; c) the Lake Park Loan has not been repaid to the Debtor, in full, by February 10,

2016; or d) the Bank's Allowed Claim has not been repaid in full (in accordance with the terms

of the Plan) on or before February 16, 2016.

### Treatment of the Bank's Claim

e)      On March 24, 2014, The Bank obtained a judgment against the Debtor and other

affiliates of the Debtor in the amount of $1,784,003.00 (the "Judgment"). The Judgment was

entered in case 2012 L 8328 pending in the Circuit Court of Cook County, Illinois (the "Law

Division Case"). A citation to discover assets issued in the Law Division Case was personally

served on the Debtor in January of 2015. That citation gave The Bank a lien on the Debtor's

membership interest in Lake Park. Except as described below, The Bank has not received a

payment from any party with respect to the Judgment.

f)      The Debtor believes that the value of the collateral which secures The Bank's

Claim in this Case exceeds the amount of the Bank's judgment. On July 30, 2015, principal and

interest due to The Bank on the judgment totaled two million eight hundred sixty-nine and

34/100 dollars ($2,000,869.34), comprised of $1,784,003.00 judgment principal, and

$216,866.34 judgment interest. Interest continues to accrue on the judgment at the judgment rate

11

of interest provided for by Illinois law, which is nine percent (9%) per annum, and totals $439.89

per diem from and after July 31, 2015. Pursuant to Section 506(b) of the Bankruptcy Code, The

Bank, as an "over secured" creditor, has the right to ask the Court to grant it an allowance for the

reasonable amount of its legal fees and expenses which it has incurred since the day of the

judgment, in connection with its efforts to enforce the judgment in state court as well as in the

Bankruptcy Court.

g)      The Bank's allowed secured claim shall be paid in full, with interest and such

other charges which are allowable to it under Section 506(b) of the Bankruptcy Code, from the

proceeds of the initial disbursement of not less than $1.15 Million, and such other funds as the

Debtor may pay to the Bank from other sources, including without limitation, the proceeds of the

repayment of the Lake Park Loan.

h)      Notwithstanding any other provision of the Plan, the Bank's Claim shall be

deemed to be paid in full, and the Bank shall release its Claim (including a claim of attorney fees

under paragraph of this Class) against all obligor parties and collateral which secures such

Claim, if it receives the amounts set forth below from the proceeds of liquidation of the collateral

which secures the Loan or from payments made by the Debtor by the following dates:

| | |
|---|---|
| On or before December 31, 2015: | $1.8 Million |
| On or before February 28, 2016: | $1.9 Million |
| On or before April 1, 2016: | $2.0 Million |

If and when the Bank has received payment in full of its Allowed Secured Claim (in accordance

with the terms of the Plan), the Bank shall release its liens on all collateral (on documentation

acceptable to The Bank and prepared by the Debtor at the Debtor's sole expense).

i)      On or before March 15, 2016, the Bank shall have leave to file an application for

payment (under 11 U.S.C. §506(b)) of its legal and professional fees, costs and expenses which it

has incurred in connection with the enforcement of its judgment against the Debtor both prior to

and following the commencement of the Debtor's Case, along with any other expense items

which may be charged to the Debtor under the terms of the loan agreements which evidence the

Bank's claim and are otherwise allowable under 11 U.S.C. §506(b).

**CLASS THREE** - HOLDERS OF EQUITY INTEREST IN THE DEBTOR - Upon the Debtor's

receipt in good funds of the New Equity, the equity interests of Fund Development in the Debtor

shall be reaffirmed. However, if the New Equity is not received by the Debtor within the time

periods and in the amounts provided by the Plan, then those interests shall be cancelled and held

for naught and the following procedure shall take place.   The Plan is to be funded by an initial

$1.2 Million equity contribution to be made to the Debtor by FDC.    Any party may also bid to

make that initial equity contribution, under these procedures. First, they must file a document

with the Court which indicates their intent to make a bid for the equity, which must be filed

before the time for casting ballots to accept or reject the Plan expires. Any person who makes

such a bid must appear in Court at the hearing scheduled for confirmation of the Plan, and have

with them proof of their ability to fund a competing bid for the equity of the Debtor. No

competing bid shall be accepted by the Debtor unless it exceeds $1.3 Million. Should such a bid

be made by a competing bidder, then bidding shall proceed in $50,000.00 intervals until a final

bid is made. The winning bid must close within twenty-four (24) hours of the confirmation

hearing. Any excess proceeds received from the bidding shall be used, first, to pay the Secured

Claim of UPB, and then, to pay any unpaid amounts due to holders of Administrative Claims and

Priority Claims, and then to holders of Unsecured Claims unless the provisions of paragraph h of

Class 2 have been effectuated in which case this provision has no effect.

## CLAIMS OBJECTIONS

To the extent that the Debtor objects to any Claim, it is expected that these objections may be filed prior to September 30, 2015, but may not be fully resolved until after Confirmation of the Plan. Debtor may file objections because 1) a creditor filed duplicate claims, 2) because a creditor has filed a claim designating it to be in the wrong class, or 3) because the amount of the claim as filed is an unliquidated amount due which will need to be liquidated.  Any claim objection which is sustained shall modify this Plan and the amount provided for that creditor.

## PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided to all of the known holders of Claims against and Interests in the Debtor. The purpose of this Disclosure Statement is to provide sufficient information to enable a hypothetical, reasonable investor, typical of the holder of Claims which are impaired under the Plan, to make an informed judgment about the Plan.

Unless specifically stated to be from other sources, the information contained in this Disclosure Statement has been submitted by the Debtor. No representations concerning the Debtor or this Plan, other than those set forth in this Disclosure Statement, have been authorized by the Debtor.

The Debtor believes that all of the information contained in this Disclosure Statement is accurate. However, the Debtor is unable to warrant that there are no inaccuracies.

## CONFIRMATION OF PLAN

The Debtor is providing a copy of this Disclosure Statement to each Creditor whose Claim has been scheduled by the Debtor or who has filed a proof of claim in the

Debtor's case.  The Debtor intends that this Disclosure Statement will assist creditors

whose Claims are impaired in evaluating the Plan and in determining whether to accept

or reject the Plan.  Under the Bankruptcy Code, an interested party may not solicit

acceptance of the Plan unless (a) that interested party furnishes a copy of a disclosure

statement before or concurrently with solicitation or (b) the Bankruptcy Court has

authorized the interested party to solicit votes.

A quick overview of the process for the confirmation of a reorganization plan

may be useful.  For a bankruptcy court to approve a proposed reorganization plan, the

Plan's proponent must show that the Plan satisfies the 13 requirements of Section 1129

of the Bankruptcy Code, if they are applicable.  They are: (1) the Plan's compliance

with Title 11, (2) the proponent's (in this case the Debtor's) compliance with Title 11,

(3) the good faith proposal of the Plan, (4) the disclosure of payment, (5) the

identification of management, (6) the regulatory approval of rate changes, if applicable,

(7) the "best interest" test, (8) the unanimous acceptance by impaired classes, (9) the

treatment of administrative and Priority Claims, (10) the acceptance by at least one

impaired class of Claims, (11) the feasibility of the plan, (12) the bankruptcy fees, and

(13) retiree benefits. See Section 1129(a)(1)-(13) of the Bankruptcy Code.

If, however, a plan is not approved by all of the impaired classes, as required by

Section 1129(a)(8) of the Bankruptcy Code, it is still possible for a plan to be

confirmed.  If at least one the non-insider, impaired classes of Claims approves the

plan, then a plan may be confirmed if two additional requirements are met. See

1129(a)(8) of the Bankruptcy Code.  If the Bankruptcy Court finds that all of the

applicable requirements of Section 1129(a) of the Bankruptcy Code are met except for

Section 1129(a)(8) of the Bankruptcy Code and also that the plan does not discriminate unfairly between impaired classes and is fair and equitable to the rejecting classes, then the Bankruptcy Court may confirm the plan. See Section 1129(b)(1)-(2) of the Bankruptcy Code.

If the Plan is accepted by Class One or Class Two the Debtor will still seek to confirm the Plan pursuant to the new value exception to the absolute priority rule. To accomplish this, the Debtor will offer to sell the stock of Reorganized Debtor to persons or entities other than Fund Development Corporation. As noted elsewhere persons or entities that wish to make a Higher Offer for the Stock of Reorganized Debtor Any party may also bid to make that initial equity contribution, under these procedures. First, they must file a document with the Court which indicates their intent to make a bid for the equity, which must be filed before the time for casting ballots to accept or reject the Plan expires. Any person who makes such a bid must appear in Court at the hearing scheduled for confirmation of the Plan, and have with them proof of their ability to fund a competing bid for the equity of the Debtor. No competing bid shall be accepted by the Debtor unless it exceeds $1.3 Million. Should such a bid be made by a competing bidder, then bidding shall proceed in $50,000.00 intervals until a final bid is made. The winning bid must close within twenty-four (24) hours of the confirmation hearing. Any excess proceeds received from the bidding shall be used, first, to pay the Secured Claim of UPB, and then, to pay any unpaid amounts due to holders of Administrative Claims and Priority Claims, and then to holders of Unsecured Claims unless the provisions of paragraph h of Class 2 have been effectuated in which case this provision has no effect.

<u>EFFECT OF CONFIRMATION</u>

Upon the Effective Date, any debt that rose before the Petition Date, and any

debt of a kind specified in Section 502(g), 502(h) or 502 (i) shall be discharged, except as otherwise provided in the Plan. This discharge shall be effective regardless of whether or not a proof of claim is filed or deemed filed, a Claim is an Allowed Claim or the holder of Claim has accepted the Plan.

The provisions of the Plan shall be binding upon the Debtor and any creditor or equity security holder, whether or not such creditor or equity security holder has accepted the Plan and regardless of whether the Claims of such creditor or equity security holder are impaired under the Plan. Upon the Effective Date, all Property of the Estate shall vest in the Debtor. Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all Claims and Interest of creditors and equity security holders.

PERSONS ENTITLED TO VOTE ON PLAN

The Bankruptcy Court in connection with confirmation of the Plan will only count the votes of classes of creditors whose Claims are allowed and who the Debtor seeks to impair under the Plan. Generally, and subject to the specific provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full in cash of the allowed amounts of their respective Claims on the "Effective Date." The Debtor's Plan seeks to impair the Claims of Class One and Two.

Any ballot which accompanies this Disclosure Statement does not constitute a proof of claim. If any creditor is uncertain whether its claim has been correctly scheduled, it may examine the Debtor's schedules which are on file with, and may be inspected at the Office of the Clerk of the Bankruptcy Court, 219 S. Dearborn, Chicago,

Illinois as well as the attached chart showing each creditor the class of that creditor as well as the amount the debtor believes each creditors claim should be allowed.

The Bankruptcy Court at the confirmation hearing must determine, among other things, whether each class of creditors whose Claims are impaired by the Plan has accepted the Plan. Under Section 1126 of the Bankruptcy Code, an impaired Class of Claims is considered to have accepted the Plan if both a majority in number and two-thirds (2/3) of the dollar amount of those actually voting vote to accept the Plan. The Claims of those who do not vote are not counted in determining whether the requisite statutory majority in number and dollar amount have voted for acceptance. Acceptance by the statutory majority will bind the minority who dissent and those who fail to vote. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Bankruptcy Court must also determine whether under the Plan class members will receive property of a value, as of the effective date of the Plan, that is not less than the amount that such class members would receive or retain, if a Chapter 7 trustee liquidated the Debtor's property under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

<u>SOURCES OF INFORMATION</u>

In preparing this Disclosure Statement, counsel for the Debtor relied upon the utilized the following:

(1) Income and Expense records;

(2) Financial records; and Estimation of the sale of assets and other sources and financial information; and

(3) Discussions with the Debtor.

## POST-PETITION ACTIVITIES

On February 11, 2015, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. During the course of this reorganization case, the Debtor continued to investigate the sales of assets and other sources.  Since the date of filing the debtor has had no income and that will remain until Lake Park, LLC has refinanced the commercial shopping center.   Based on this Plan being confirmed that refinance can proceed.

All of the above events have enabled the Debtor to prepare the Plan.

## OTHER ASPECTS OF THE PLAN

The Debtor shall be disbursing agent under the Plan.

All executory contracts not previously assumed, assigned or rejected which exist between the Debtor and any another party whether oral or in writing, shall be deemed assumed as of Confirmation of the Plan.

Further, all of the Debtor's assets shall vest in the Debtor upon Confirmation of the Plan, subject only to the terms and conditions of the Plan and if not confirmed in the Debtor in Possession. The Debtor shall be entitled to manage their affairs and operate its business after Confirmation without further Order of the Bankruptcy Court.

The Plan is self-executing. The Debtor shall not be required to execute any newly created documents to effectuate the terms of the Plan.  The Bankruptcy Court shall retain jurisdiction after Confirmation of the Plan of Reorganization to: (i) consider applications for fees and allowances for professional persons; (ii) supervise the implementation of this plan; (iii) consider objections to claims against the estate of the debtor; (iv) hear and conclude all adversary proceedings or contested matters; (v) resolve disputes regarding interpretation of this Plan; (vi) fix expenses of administration; (vii) enter Orders to further consummation of the Plan; (viii)

approve modifications of the Plan upon motions brought before the Bankruptcy Court; (ix)

consider all applications and matters pending before the Bankruptcy Court on the date of

Confirmation; (x) hear and conclude any adversary proceedings and other matters relating or

giving rise to litigation recoveries; (xi) enter any order, including injunctions, necessary to

enforce title, rights and powers of the debtor, and to impose as the Bankruptcy Court may deem

necessary; and (xii) enter an Order concluding and terminating this Chapter 11 case.

The provisions of the Plan shall bind all creditors, Interest holders and parties in interest.

Except as expressly provided in the Plan, no interest or penalties shall accrued or be paid to any

creditor.

## LIQUIDATION ANALYSIS

Failure of the Debtor to obtain Confirmation of its Plan could result in a forced

liquidation (by secured creditors. or a conversion to a case under Chapter 7 of the Bankruptcy

Code. The following comparison indicates the likely results of a forced liquidation and shows

that under the Plan creditors will be paid in full whether the Plan is confirmed or the assets are

sold. All creditors will be paid in full whether this case proceeds under the proposed plan or a

liquidation occurs under Chapter 7. In essence, creditors are not at risk at being paid. Timing

is the issue. Under Confirmation of the Plan, payment would occur quicker.

## MEANS FOR IMPLEMENTING THE PLAN

The Debtor intends to continue the operations of its business which, based upon the

data, after all allowed claims are paid as provided by this Plan. All distributions under the

Plan will be made from the sale of the Debtor and other sources as discussed in the Plan and

this Disclosure Statement.

20

## FEASIBILITY AND FAIRNESS OF PLAN

Attached to this Disclosure Statement, in addition to Exhibit B (creditor and class breakdown) is a Liquidation Analysis, and projections for the next five years. The projections are based on that after the plan is consummated and payments made that the Debtor will continue to operate based on yearly distributions of its remaining 20 percent membership interest in Lake Park, LLC. This is not a Liquidating Plan and the Debtor will continue to operate its business, however, no portion of the plan payments will come from its operations; only from the sale of assets and other sources. The purpose of the projected financial information concerns the Debtor's ability to make the payments under the Plan and future operations.

The Plan is feasible given the liquidated value of the Debtor. These  value of the assets clearly reflect the Debtor's ability to perform under the proposed Plan. This fact makes this Plan feasible.

The Debtor believes that this Plan represents an opportunity for the holders of Allowed Claims to be paid in full.  Therefore, the Plan is also fair and reasonable.


## RECOMMENDATION

The Debtor strongly recommends that those persons entitled to vote, vote to accept the Plan.

TRI FUND DEVELOPMENT, LLC

By: /s/Paul M. Bach_____
Paul M. Bach, one of their attorneys

SULAIMAN LAW GROUP, LTD.
900 JORIE BOULEVARD, SUITE 150
OAK BROOK, IL 60523
PHONE: (630) 575-8181
FAX:    (630) 575-8188
ATTORNEY NO: 6209530